IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Sait Dogru<br><br>    Plaintiff,<br><br>v.<br><br>VDS Holding LLC D/B/A Verite Data, LLC,<br>    Defendants | Case No.<br><br>**Judge:** |

**COMPLAINT**

1. Plaintiff, Sait Dogru for its Complaint against Defendants Verite Data, LLC for Copyright Infringement, states as follows:

PARTIES

2. Plaintiff is an individual who resides in the state of New Jersey, USA and the developer of a software application called Saitology Campaign (Hereinafter the "Software" or "Campaign").

3. Plaintiff owns and operates Saitology, LLC, a New Jersey corporation, from which Plaintiff licenses the Software to corporate and government entities for use with database analysis. (Exhibit 1)

4. Defendant VDS Holding LLC D/B/A Verite Data (Hereinafter "VDS" or "VERITE") is a corporation incorporated in the State of Illinois (Exhibit 2) having a headquarters in Chicago, IL.

JURISDICTION AND VENUE

5. This is a civil action seeking damages for copyright infringement under the copyright laws of the United States (17 U.S.C. § 101 et seq.).

1

6. This Court has subject matter jurisdiction over Plaintiff's federal copyright infringement claims pursuant to 28 U.S.C §1338 and 28 U.S.C. § 1331.
7. This Court also has diversity jurisdiction over all the claims as the amount in controversy exceeds $75,000.00, and Plaintiff is resident a New Jersey and Defendant is located in and subject to the laws of the State of Illinois, pursuant to 28 U.S.C. § 1332(2).
8. This Court has personal jurisdiction over Defendant, as defendant is a resident of and has significant contacts with this judicial district.
9. Venue in this District is proper under 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in this judicial district, defendant VDS is headquartered in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.
10. Venue in this District is proper under 28 U.S.C. §1400(a).

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

11. Plaintiff owns a valid copyright in the Software, having registered the Software with the Register of Copyrights and owning sufficient rights, title, and interest to such copyright to afford Plaintiff standing to bring this lawsuit and assert the claim herein. (17 U.S.C. § 101 et seq.).
12. Plaintiff registered the Software as a Copyrighted Work with the United States Copyright Office on 2024-11-05 and was assigned the registration number TX0009442482. A copy of the report from the Copyright Office is attached. (Exhibit 3).
13. The Software is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws.
14. Plaintiff's Software intellectual property is very important to his business Saitology, LLC.
15. The Software is encrypted to prevent access to data in the Software unless the Software is copied onto a computer and run.

16. All data such as user names of users registered by the system administrator, campaign names, names of customers, the number of graphs created, and, the number of nodes created are encrypted in the Software.
17. Plaintiff is the exclusive Licensor of the Software.
18. Plaintiff licenses the Software to clients for use in interrogating large data sets to analyze and solve problems or direct actions based on data relationships.
19. A licensee of the Software may appoint a system administrator who is authorized to appoint registered users of its copy of the licensed Software.
20. Only registered users have user names and passwords to access the Software.
21. The Software records the name of the system administrator, and registered users in encrypted files which are only available when the software is copied to a computer and run by the system administrator or a registered user.
22. On or about September 21, 2015, Plaintiff licensed the Software to VALID USA ("VALID" or "Licensee"), a company with a location at 1011 Warrenville Rd. Lisle, IL. (Exhibit 4)
23. The Licensee appointed Allen Maskell as the system administrator.
24. The license to Licensee expressly states it is a 'non-transferrable license to install and use...'. (Exhibit 4)
25. A licensee is not authorized to transfer the license to the Software.
26. The license to Licensee does not expressly say it is transferrable.
27. The license to Licensee is not transferrable.
28. The license to Licensee calls for a monthly license fee, for 2 years, to be paid by the Licensee. (Exhibit 4)
29. Christopher LeClair and Allen Maskell were employees of Licensee in October 2022. (Exhibit 5)
30. LeClair and Maskell, by their employment with Licensee, knew the terms and conditions of the license to Licensee.
31. LeClair and Maskell, by their employment with Licensee, had access to the Software licensed to Licensee. (Exhibit 5)

32. Defendant was incorporated on May 22, 2022 by LeClair. (Exhibit 2)
33. Licensee stopped doing business in Illinois in late 2022.
34. LeClair and Maskell, by their employment with Licensee, failed to inform Plaintiff that Licensee had ceased operations in Illinois in 2022.
35. files. Defendant purchased the assets of Licensee on or about September 30, 2022.
36. LeClair and Maskell, by their employment with Licensee, individually and together, caused the Software to be accessible to Defendant VDS.
37. LeClair and Maskell, by their employment with Licensee, individually and together, caused the Software to be transferred to Defendant VDS.
38. LeClair and Maskell, are executive employees of Defendant VDS.
39. The Software contains an Error Detection routine to help Plaintiff provide excellent customer service.
40. The Error Detection routine provides a built-in error reporting feature that generates an Error Detection message to Plaintiff when the Software is running and detects an error.
41. An error may be a user error or a Software error.
42. A user error may be caused by an registered user or the system administrator, running the Software, and trying to enter invalid data or run an invalid command or asking the Software to process invalid data or otherwise causing a processing error.
43. A Software error may be a software 'bug' or error in the code making up the Software. A
44. The Error Detection message contains several pieces of encrypted data including, but not limited to the IP address of the computer where the software has been copied, the date and time the error was detected, the registered users who are logged into the Software at that instant, the name of the Licensee of that copy of the Software and the names of the customer being serviced, the name of the database being analyzed, and the names of the Software administrator and all registered users. (Exhibits 8 and 9)
45. The Software does not generate an Error message if it is not being used.
46. The Software does not generate an Error message if it is not copied onto a computer and run by clicking the desktop icon.

47. Plaintiff received at least 109 Error messages indicating the Software, licensed to Licensee, was copied onto a computer at the IP address registered to Defendant VDS after the date Licensee stopped operations in Illinois, specifically between March 1, 2023 and November 25, 2024.
48. LeClair and Maskell, did not have permission or authorization to transfer the license from Licensee to Defendant VDS.
49. Defendant does not have and never had a license to the Software.
50. Defendant does not have permission or authorization to copy the Software.
51. Defendant does not have permission or authorization to use the Software.

COMMUNICATION BETWEEN PLAINTIFF AND DEFENDANT

52. LeClair and Maskell, by their employment with Licensee, had responsibility for Software renewal and maintenance. (Exhibit 5)
53. On October 18, 2022 at 5:00 pm, Plaintiff reached out to Licensee contact Rose, to inform Licensee, that Plaintiff had reorganized the company and now used Stripe, a payment processing company, for invoicing and collection of maintenance fees and asked permission to send the annual invoice for software maintenance from Saitology to Licensee. (Exhibit 5)
54. On October 19, 2022 at 8:48 am, a date after Licensee has ceased operations in Illinois, LeClair, purporting to be Senior Vice President and General Manager of Data Solutions for Licensee, using his Licensee email Christopher.LeClair@VALID.com, replied to Plaintiff, with a copy to Maskell, that when it was time to renew the software, Plaintiff may send a proposal to Licensee for LeClair's review. (Exhibit 5)
55. LeClair and Maskell had knowledge of the cessation of operations in Illinois by Licensee at that time, as former employees of Licensee. (Exhibit 5)
56. On March 12, 2023, LeClair misrepresented that Defendant had a perpetual license, over wire communication comprising internet and phone lines.
57. On March 12, 2023, LeClair admitted Defendant used the Software licensed to Licensee, over wire communication comprising internet and phone lines.

58. LeClair acted in a scheme to defraud Plaintiff by a misrepresentation of a perpetual license in a written text message sent to Plaintiff on March 12, 2023, over wire communication comprising internet and phone lines.

59. LeClair misrepresented Defendants' use of the Software in writing to Plaintiff by text message from the phone number (708) 466-9049, on November 11, 2022 at 2:51 PM, by asserting that Defendants were not using the Software.

60. On October 19, 2022, after Licensee had ceased operations in Illinois and after Defendant purchased the assets of Licensee, LeClair acknowledged use of the Software and agreed to review a proposal for annual maintenance. (Exhibit 5)

61. On October 19, 2022, Maskell was given notice of the License and its renewal proposal and received notice of the renewal by email at his email address at the then defunct Licensee. (Exhibit 5)

62. On October 19, 2022, Plaintiff sent an invoice for annual maintenance of the Software. (Exhibit 5)

63. On November 11, 2022, Plaintiff followed up the invoice from October 19, 2022 by email to LeClair at his Licensee email address. (Exhibit 5)

64. On November 11, 2022, 6 weeks after LeClair was no longer working for Licensee, LeClair replied to Plaintiff by his Defendant VDS email, Christoher.LeClair@Veritedata.com, that Licensee, had ceased operations and would not be paying the invoice. (Exhibit 5)

65. On November 11, 2022, Plaintiff received notice that Licensee had ceased operations in Illinois.

66. On November 11, 2022, Plaintiff received notice that the license to Licensee had terminated by Licensee ceasing operations in Illinois.

67. On November 11, 2022, LeClair replied to Plaintiff by his Defendant VDS email, Christoher.LeClair@Veritedata.com, as CEO of Defendant VDS, that Defendant VDS does not accept the contract to license the Software. (Exhibit 5)

68. On November 11, 2022, Defendant LeClair replied to Plaintiff by his Defendant VDS email, Christoher.LeClair@Veritedata.com, as CEO of Defendant VDS, that Defendant

VDS does not accept assignment of the License, even though an assignment is prohibited by the license to Licensee.

69. On or before November 11, 2022 and up to the present date, Plaintiff has not offered an assignment of the license to Licensee or Defendant.

70. VDS has never had authorization to copy or use the Software.

71. On November 11, 2022, LeClair replied to Plaintiff by his Defendant VDS email, Christoher.LeClair@Veritedata.com, as CEO of Defendant VDS, that Defendant VDS will" be in touch" with Plaintiff if they decide to use the Software. (Exhibit 5)

72. On or before November 11, 2022, LeClair and Maskell conspired to copy the Software licensed to Licensee for use in the furtherance of the goals of Defendant VDS.

73. On or before November 11, 2022, LeClair and Maskell acquired dominion and control of the Software previously licensed to Licensee.

74. On or before November 11, 2022, LeClair and Maskell enabled use of the Software, previously licensed to Licensee, to support commercial activities by Defendant in interstate commerce.

75. On February 16, 2023, Plaintiff emailed LeClair at his Defendant email and informed LeClair that Defendant VDS has copied the Software in violation of Plaintiff's rights and Defendants do not have permission, authorization or a license to the Software. (Exhibit 6)

76. On March 12, 2023 in a test message exchange, LeClair admitted using the Software. (Exhibit 7)

77. On March 12, 2023 in a text message exchange, LeClair threatened Plaintiff with sanctions for enforcing Plaintiff's Copyright rights. (Exhibit 7)

78. On March 12, 2023 in a test message exchange, LeClair accused Plaintiff of fraud for enforcing Plaintiff's Copyright rights. (Exhibit 7).

79. LeClair admitted to use of the Software by Defendant in a text message from the phone number (708) 466-9049 to Plaintiff on March 12, 2024 at or around 5:47 PM.

COPYING SOFTWARE BY DEFENDANTS

```
First registered error case:

172.87.60.6                          ___%%%%%%%%%%%%%%%%___
17/Mar/2023:16:00:46                 ___%%%%%%%%%%%%%%%%___
2023-03-17 15-00-02:TCL LOOKUP COMMAND localhost^invalid command name "localhost"
    while executing
"# Compiled -- no source code available
error "called a copy of a compiled script""
    (procedure "preferencesApply" line 1)
    invoked from within
"preferencesApply"
    invoked from within
".prefs.bFrame.bApply invoke"
    ("uplevel" body line 1)
    invoked from within
"uplevel #0 [list $w invoke]"
    (procedure "tk::ButtonUp" line 24)
    invoked from within
"tk::ButtonUp .prefs.bFrame.bApply"
    (command bound to event)^^0^0^0^2023-03-17 15-00-02^
D1/user: cr_admin
D1/instance: weissmanmdb
D1/server:
D1/db:
D1/wipDB: crwip
D1/type: SQL Server
D1/code:
D1/msg:
D1/sql_1: INSERT INTO dbo.crunner_de_chunks (object_id,line_number_id,chunk_line) VALUES
('Pcr_admin',1,'## Options file for Campaign 1.0
## Updated on 2023-03-17 14:59:49
dbUserID:
dbPasswdSaveToXML: 1
dbConnectVia: 1
dbType:
dbInstance: WeissmanMDB
dbConnString:
dbAutoDSNServer:
dbAutoDSNDB:
dbWipDB: crwip
...
...
...
autoXmlArchiveDir: C:/Users/ALLISO~1.GIL/AppData/Local/Temp/3
...
...
...
flyerTemplateDir: C:/Users/ALLISO~1.GIL/AppData/Local/Temp/3
flyerOutputDir: C:/Users/ALLISO~1.GIL/AppData/Local/Temp/3
...
...
...
serverHost: localhost
serverPort: 12345
serverLogFile: C:/Users/Allison.Gilligan/AppData/Roaming/Saitology/Campaign/crunner_server_log.log
sqlControlDir: C:/Users/ALLISO~1.GIL/AppData/Local/Temp/3
browser:
documentationDir: C:/Program Files (x86)/CampaignRunner/html
webCacheDir: C:/Users/Allison.Gilligan/AppData/Roaming/CampaignRunner/CampaignRunner/crunner_webcache
...
...
...
emailTempDir: C:/Users/Allison.Gilligan/AppData/Roaming/CampaignRunner/CampaignRunner/crunner_esp
...
...
...
externalTimesRightJoin: 0')
D1/sql_2: DELETE FROM dbo.crunner_de_chunks WHERE object_id = 'Pcr_admin'^1: bgerror {invalid command name
"localhost"} {-errorcode {TCL LOOKUP COMMAND localhost} -code 1 -level 0 -errorstack {INNER {invokeStk1
localhost get 1.0 end} CALL preferencesApply UP 1 UP 1 CALL {tk::Bu
2:
sendErrorReport:andpwfjebsafypsadjpqdntirenslkrjlw:v10:host(vdsweissman):user(validusa\allison.gilligan):con
n(cr_admin@weissmanmdb):users(allen.maskell^allison.gilligan^cr_admin^dgaragnani^lou.lendi^weissmanuser)
```

80. On March 17, 2023, Plaintiff received an error message, shown here, from IP address "172.87.60.6". (Exhibit 9)

81. The Error message received by Plaintiff on March 17, 2023 was generated by the Error Detection routine in the Software and included then defunct Licensee's name as the licensee of the Software and the IP address of Defendant VDS, where the Software had been copied. (Exhibit 8)

82. The names of the registered users in the March 17, 2023 error message are reported from the encrypted files in the Software.

83. The error messages received, also contain information about objects loaded in memory on the computer where the Software has been copied, such objects including campaigns, graphs, nodes, client files, and client tables with dates of creation and modification, showing continuous infringement from at least March 17. 2023 to November 26, 2024.

84. On March 17, 2023, Plaintiff received an error message indicating a copy of the Software, licensed to Licensee, had been made at IP address "172.87.60.6". (Exhibit 9)

85. On March 17, 2023, Plaintiff received an error message indicating a substantially similar copy of the Software licensed to Licensee, comprising a substantially similar error routine to send substantially similar error messages to Plaintiff, had been made at IP address "172.87.60.6". (Exhibit 9)

86. Each error message received from IP address "172.87.60.6" is evidence of Defendant VDS making a copy of the Software.

87. On March 17, 2023, the error message received by Plaintiff indicated user Allison Gilligan at IP address "172.87.60.6", made a copy of the Software registered to Licensee, for use with a database identified as weismanmdb. (Exhibit 9)

88. On March 17, 2023, and again at November 26, 2024, the error messages received by Plaintiff indicated user Allison Gilligan at IP address "172.87.60.6" intentionally copied Plaintiff's Software, licensed to Licensee without authorization or in a manner that exceeds her authorized access by identifying herself as authorized by or associated with then defunct Licensee by using an email address of Licensee ending in '@VALID.com'. (Exhibit 9)

89. On March 17, 2023, the error message received by Plaintiff indicated Maskell, and unknown individuals D. Garagnani and Lou Lendi, were registered users of the

9

Licensee's copy of the Software which had been copied at IP address "172.87.60.6". (Exhibit 9)

90. On March 17, 2023, the IP address in the error message indicated, Gilligan, Garagnani and Lendi are employees or agents of Defendant VDS Data.

91. On or before March 17, 2023, Maskell and LeClair conspired together or individually caused the Software, licensed to Licensee, to be copied on a computer registered at an IP address assigned to Defendant VDS.

92. Since at least on or before March 17, 2023, Defendants copied the Software licensed to Licensee without authorization or permission.

93. Defendant, by its description provided in its promotional material, provides analysis of large data sets to correlate data trends with past and proposed actions by a customer.

94. The Software, by its description provides tools to analyze large data sets to correlate data trends with past and proposed actions by a user.

95. On information and belief, all profits earned by Defendants, since at least on or before March 17, 2023, spring from from the copying of the Software by Defendant VDS,

96. Since at least on or before March 17, 2023, all profits received by Defendant spring from the copying of the Software or derivative works created by Defendant of the Software licensed to Licensee.

97. Since at least on or before March 17, 2023, all profits derived by Defendant are attributable to the infringement of Plaintiff's rights to the Software under the copyright laws of the United States.

98. On November 26, 2024, Plaintiff received an error message, shown here, from IP address "172.87.60.6" indicating Software registered to Licensee was copied again at a computer at the IP address "172.87.60.6". (Exhibit 9)

## Most recently registered error case:

```
172.87.60.6                                    ___%%%%%%%%%%%%%%%%%___
26/Nov/2024:09:08:23                           ___%%%%%%%%%%%%%%%%%___
2024-11-26 08-08-23:TCL READ VARNAME^can't read "glAttribute(A16530237,name)": no such element in array
    while executing
"# Compiled -- no source code available
error "called a copy of a compiled script""
    (procedure "getFullAttributeSpecsList" line 1)
    invoked from within
"# Compiled -- no source code available
...
...
...
"# Compiled -- no source code available
error "called a copy of a compiled script""
    (procedure "clipboardPaste" line 1)
    invoked from within
"# Compiled -- no source code available
error "called a copy of a compiled script""
    (procedure "graphIconPasteSelection" line 1)
    invoked from within
"graphIconPasteSelection G908"
    (command bound to event)^^0^0^0^0^2024-11-26 08-08-23^
D1/user: nagrawal
D1/instance: weissmanmdb
D1/server:
D1/db:
D1/wipDB: crwip
D1/type: SQL Server
D1/code:
D1/msg:
D1/sql_1: SELECT graph_id FROM dbo.crunner_graph WHERE graph_id = 'G903'
D1/sql_2: SELECT graph_id FROM dbo.crunner_graph WHERE graph_id = 'G903'
D2/user: allison.gilligan
D2/instance: weissmanmdb
D2/server:
D2/db:
D2/wipDB: crwip
D2/type: SQL Server
D2/code:
D2/msg:
D2/sql_1: Initialize/1...
D2/sql_2: Initialize/1...^1: bgerror {can't read "glAttribute(A16530237,name)": no such element in array}
{-code 1 -level 0 -errorstack {INNER loadArray1 CALL {getFullAttributeSpecsList {A16530236 A16530251 A16530237 A16530238 A16
2:
sendErrorReport:andpwfjebsafypsadjpqdntirenslkrjlw:v10:host(vdsweissman):user(validusa\nagrawal):conn(nagraw
al@weissmanmdb^allison.gilligan@weissmanmdb):users(allen.maskell^allison.gilligan^cr_admin^dgaragnani^eric.s
iegel^lou.lendi^nagrawal^weissmanuser)
```

100. The IP address "172.87.60.6" is registered to Defendant VDS. (Exhibit 10)

101. The names of the registered users in the November 2024 error message are saved in encrypted files in the Software.

102. The names of the registered users listed in the March 17, 2023 error message are different from the names of the registered users listed in the November 26, 2024 error message.

103. The number of graphs, nodes and client matters in the November 26, 2024 error message indicate the Defendant has copied the Software more than 400 times since the March 17, 2023 error message and engaged 50 client matters using the Software.

104. The names of the registered users to the Software are encrypted and only accessible by copying the software to a computer to run the software.

105. The Software was copied and the registered user names changed between March 17, 2023 and November 26, 2024 by the system administrator to the Software, named in the error message as Maskell.

106. Between March 17, 2023 and November 26, 2024, Plaintiff received 109 error messages from IP address "172.87.60.6", each indicating Defendant VDS made a copy of the Software. (Exhibit 9)

107. Between March 17, 2023 and November 26, 2024, Defendants caused or enabled the Software, including the Error Detection Routine, to be illegally copied to RAM at least 400 times.

108. On March 17, 2023, and again at November 26, 2024, the error messages received by Plaintiff contained encrypted data from the Software indicating user Allison Gilligan at IP address "172.87.60.6" identified herself as authorized by or in association with then defunct Licensee using a Licensee email. (Exhibit 9)

109. On March 17, 2023, and again at November 26, 2024, the error messages received by Plaintiff contained encrypted data from the Software indicating user N. Agrawal at IP address "172.87.60.6" intentionally accessed a computer without authorization or in a manner that exceeds his authorized access by identifying himself as authorized by or in association with then defunct Licensee by using a Licensee email

address. (Exhibit 9)

### ATTEMPTED COPYING OF SOFTWARE

110. On information and belief, the Software is the source of all Defendant's profits since at least March 17,2023.

111. On July 12, 2023 at 13:13:50, Plaintiff detected a user from IP Address "172.87.60.6" performed a Google search to locate Plaintiff's website. (Exhibit 11)

112. On July 12, 2023 at 13:14:54, Plaintiff detected a user identified as allen.maskell@valid.com accessed Plaintiff's website by logging in as Licensee using a then defunct Licensee email address originating from IP address "172.87.60.6". (Exhibit 11)

113. On July 12, 2023, Plaintiff detected Maskell, misrepresenting he was a registered user of a valid license of the Software to gain access to Plaintiff's website. (Exhibit 11)

114. On July 12, 2023 Maskell, used IP address "172.87.60.6", assigned to Defendant VDS, to misrepresent he was authorized to copy the Software and the Software update, which was available to licensed users of the Software. (Exhibit 11)

115. On July 12, 2023, at 13:19:21, Plaintiff detected internet traffic indicating Maskell at IP address "172.87.60.6", registered as allen.maskell@valid.com on Plaintiff's website and attempted to download a copy the Registered Software without a license or permission. (Exhibit 11)

116. On July 12, 2023 Defendant VDS, did not have a License or permission or authorization to copy the Software or the update. (Exhibit 11)

117. On July 12, 2023 Maskell used IP address "172.87.60.6", assigned to Defendant VDS, to intentionally accesses a computer without authorization or in a manner that exceeds his authorized access by using a terminated license user name.

118. On July 12, 2023 Defendants verified their dependence on the Software for generating all Defendant's profits by attempting to copy a Software update from Plaintiff's website. (Exhibit 11)

119. On July 12, 2023 Defendants verified their dependence on the Software for

Defendant VDS's profit generating activities by attempting to copy the Software from Plaintiff's website.

120. Defendant VDS is accountable for the acts of its employees as those employees act with corporate knowledge and intend to confer a benefit upon Defendant VDS.

121. Defendant acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright.

### COUNT 1 COPYRIGHT INFRINGEMENT BY DEFENDANT VDS

122. Plaintiff re-alleges and incorporates paragraphs 1 through 121 as set forth above.

123. The Software is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 et seq.).

124. Plaintiff owns a valid copyright in the Software, having registered the Software with the Register of Copyrights and owning sufficient rights, title, and interest to such copyright to afford Plaintiff standing to bring this lawsuit and assert the claim herein.

125. Defendant VDS had access to the Software through LeClair and Maskell.

126. Defendant, by its agent, LeClair admitted using the Software.

127. Defendant VDS copied, reproduced, created derivative works or authorized the copying of the Software registered to Licensee at least 109 times between March 1, 2023 and November 30, 2024 without authorization, permission or a license.

128. Defendant VDS by its agent, Maskell, attempted to copy, distribute or download a Software update by misrepresenting his authority, in violation of Plaintiffs' copyright rights.

129. Defendant VDS by its agent, Maskell, attempted to copy, distribute or download the registered Software in violation of Plaintiff's copyright rights.

130. By its actions, Defendant VDS infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by copying or attempting to copy the Software for commercial purposes without license or authorization.

131. Defendant knew the terms and conditions of the license to Licensee.

132. Defendant had knowledge of its infringement by use of alias names associated with the then defunct Licensee.
133. The belief that Defendant had a perpetual license to the Software was not reasonable in light of the express prohibition of transfer in the license to Licensee.
134. Defendant did not have a good faith belief that the use of the Software licensed to Licensee was permitted as indicated by Defendant's use of alias email names.
135. Defendant VDS's infringement was willful as it acted with actual knowledge or reckless disregard by its leadership, LeClair and Maskell, for Plaintiff's copyright rights.
136. Plaintiff has been damaged as a direct and proximate result of Defendant VDS's infringement by Defendant's using the Software and failing to pay for a license to the Software.
137. Plaintiff's damages include monthly license fees.
138. Plaintiff is entitled to recover its actual damages of lost monthly license fees from at least March 1, 2023 to November 30, 2024
139. Plaintiff is entitled to recover Defendants profits attributed to the infringement of the Plaintiff's rights, which amounts shall be proven at trial.
140. Infringement by Defendant VDS by its leader's and employee's and contractor's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court.
141. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.
142. WHEREFORE, Plaintiff demands judgment against Defendant as follows:
   1. A declaration that Defendant VDS has infringed Plaintiff's copyrights in the Software;
   2. A declaration that such infringement is willful;
   3. An award of actual damages to Plaintiff for licensee fees of at least $12,000 per month from at least March 1, 2023 to November 30, 2024.
   4. An award of profits attributable to the infringement to Plaintiff pursuant to 17 U.S.C. § 504 (a)(1), such amount to be decided at trial;

5. An award of interest, including prejudgment interest, on the foregoing amounts;

6. Permanently enjoining Defendant VDS, and its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant VDS, from directly or indirectly infringing Plaintiff's copyrights;

7. Permanently enjoining Defendant VDS, and its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant VDS, from directly or indirectly infringing Plaintiff's copyrights by copying, transferring, making or using derivative works of the Software, or otherwise use or market any database results, or software derived or copied from the Software or to participate or assist in any such activity; and

8. For such other relief as the Court deems just and proper.

Respectfully Submitted,

By: / James D Palmatier/
James D Palmatier
Attorney for Plaintiff
Palmatier Law Office
PO Box 231
Itasca, Illinois 60143
(630) 306 0612
ARDC 6276972